Good morning, Your Honor. Good morning. Marcy Tiffany appearing for the Plaintiff Appellants, Ms. D. Camfield, and Corey Camfield. State and federal law recognize the vital role that parents play in the education of their children. California believes it's so important, and California is somewhat unique in this, has enacted a Parents' Bill of Rights. That was what the statute was called. How was she deprived of this right? I mean, even the letters that you rely on didn't say never come into the school. They said you could come into the school, but you have to get, you have to ask us, because of the way that she behaved. And after that letter, she asked for permission to come on to the school. It was given on a number of occasions, and I don't know, and I was going to ask, were there any occasions when it wasn't given? It wasn't given when she was asking about her disabled child. It was not given on more than one occasion, and it certainly was not given on an activity with her other child. Well, was it requested? Yes. I'm talking about the disabled child. No, no, not with the disabled child. So, okay. But the problem with this ban, and, well, you know, what's the big deal? Your basic argument, your basic disability act, you have a claim in there that they retaliated against her for, because of issues relating to her assertion of her children's rights. That's correct. But I don't see how that happened here. Particularly since after that letter that you're relying on for the federal retaliation claim said you could come on to the school grounds, you just have to let us know. And they gave her permission, and they never denied her permission with respect to this disabled child. And at least as I view it as a layman for the moment, parent of a disabled child, I think her behavior was disgraceful, and that this was perfectly reasonable. Well, Your Honor, her behavior that triggered the issuance of this letter was all advocacy on behalf of her child. I'm sorry, I didn't hear it. What triggered the issuance of the letter to begin with was all advocacy on behalf of her child? Yeah, but there's advocacy and there's advocacy, and they weren't, the letter didn't say that she couldn't come into the school to advocate for her child or for any other reason. All they did was place what seems to me on its face to be a reasonable restriction saying give us notice of when you want to come and we'll act on it, and they gave it to her in a number of instances. I don't understand the purpose of this lawsuit. Do you expect to collect a lot of money here? Absolutely not, Your Honor. So what's the purpose of this? And they're no longer in the school. I'm not saying it's moot. I'm just trying to understand what the whole purpose of this lawsuit is. I know she got aggravated with the school administration. They got aggravated with her, not without good reason, on undisputed facts. What's the purpose of this lawsuit? It's easy to look at this situation and say, oh, what's the big deal? She has to ask permission to come on campus. Well, first of all, Your Honor, there are a lot of circumstances where parents are allowed to come on campus without asking permission. But this is not an equal protection case, is it? No, it's not. The statute sort of envisions that you, within a reasonable time after asking, you should be allowed to come on campus, right? That's what 51101 says. It does. And they sent her a letter that said, give us 24 hours notice. That's correct. And in response to Judge Corman's question, did they ever say when she gave 24 hours notice that she couldn't come? Absolutely, they did. And there was one incident actually involving her disabled child. She accompanied her disabled child on a field trip. And that was her practice, because he has cerebral palsy and he needs special care to make sure he doesn't get jostled. He also has some severe allergies. After that field trip, she was told by the principal, if you go on another field trip, we're going to arrest you. But did she ask for permission? Yeah, she did. And she was told, no, you can't go. I was just trying to find that in the record. Can you show me where in the record she asked for, after getting the letter, the DP letter, she said, I'd like to come show up in 24 hours and be at the school. And they said no. I'm sorry. There were two instances. One where she asked to go. There may have been instances before the letter. I'm trying to figure out. No, no, no. This is after the letter. Certainly, the letter attached to the complaint is my letter. The reason I got involved in this case, to begin with, with respect to that client was told, you can't go on a field trip with your son tomorrow. And so I wrote a letter to the school, and the letter is attached to the complaint, saying. I'm just trying to figure out, was there an instance where she made a request 24 hours beforehand where the school said, no, thank you for your request, but we're not going to let you on? There were two instances. One had to do with the field trip with her disabled child. The other one had to do with the HOA program in Mrs. Picazzo's class. And I can give you the. Okay. I'll look at it. But what you're representing is that she made a request 24 hours beforehand and the school district within that 24-hour period said, no. Yes. Okay. I didn't find it directly. And did they give her a reason? I'm sorry. No. And that's part of the problem here, is there was no reason to be given. Let me respond to this wasn't a big deal. I'm not sure what you mean by there's no reason to begin with. Well, there was. I mean, I understand the facts here are not really in dispute as to what, with respect to the interaction between her and the school administration, and particularly with respect to the, I guess, the student aid part-time instructor in the class, were not disputed. Many of the facts were disputed, Your Honor. And, you know, the real fundamental problem here is this is a very serious restriction because it gave the principal the ability to say, the authority to say no without any review, without any justification, without any reason whatsoever, and to do it indefinitely. She could have simply said no every single time. But he didn't. It may have done that, but he didn't exercise it that way. At best, he may have made it, at best, possibly an abuse of discretion. And I'm not sure that a field trip is the equivalent to a visit to the school. She did say no in an instance where it seemed to be very clearly in response to Mrs. Camfield's expression of her First Amendment rights, critical of the teacher. Being critical of grounds to deny a parent access to the school. We're talking about vulgarity. We're talking about the part, I don't know what the word is for the assistant in the class that he gets because he's disabled. She's so scared that she hides in a closet when your client shows up. We dispute that, Your Honor. She wasn't scared. She just didn't want to talk to, she didn't want to be asked questions. She was avoiding her. This was, this was, there was no yelling at anyone. There was no intimidation. She was simply complaining about the change of aides. But let me address this, Your Honor. Can you assume for a moment that there was a violation of the California statute, and just for purposes of discussion? Is there any California case suggesting there's a private cause of action under that statute? There's nothing on point except for the general principle that where there is a policy and there is a right. There is a private cause of action. We would be the first court, if we were to find one, to find a cause of action, a private cause of action under that statute. Yes. But let me talk about this, I'm sorry. I'm really focused on the retaliation claim because under the IDEA, a parent, or is it, it's the Rehabilitation Act and the ADA. You have a right to advocate on behalf of the disabled child. Am I right on that? That's correct. Those are the right statutes. And so, part of, much of what she was doing, and certainly everything cited in the letter, has to do with her advocacy on behalf of her disabled child. So I'm really interested in the retaliation claim because if you look at the letter to MISTI, that's the claim I'm most focused on because if you look at the letter, it does cite as reasons for the ban on MISTI, only incidences having to do with her advocacy for her disabled child. And then it cites two statutes that clearly don't apply. And I'm wondering if some of this other stuff is just pretext where they didn't want to have a parent of a child protected by these acts who felt their child wasn't being treated appropriately. That was certainly what the evidence would suggest, Your Honor, in addition to the principal being irate about comments that Mrs. Canfield had made on her Facebook, which is a free exercise. First Amendment rights, she's guaranteed to do that. You're not supposed to be retaliating in a school district context for something that was said under the First Amendment. But the retaliation in this case has to be in relation to the disabled child, correct? With respect to the issuance of the letter, that's correct. So work away from the letter for a second. Judge Wardlow is asking you to focus on the retaliation claims. So the letter to me maybe is just pretext for something else, for preventing her from doing what she has a right to do under the law, which is advocating for a disabled child. We think that's absolutely right. And the other piece to look at is, let's say there really was a disruption here. Judge Corman's perspective on it, that this was terrible behavior. I think different people could have different views, and some of this they could not even prove. But let's say there was. There are provisions under the California codes, and California has legislated comprehensively in this area. Here's what you do when there's a disruption. This is the appropriate response. In this case, they did not do what they were permitted to do under the statute. Well, we're on summary judgment here, right? Yes. So everybody agrees, protected class. Everybody agrees they gave a facially valid reason for their actions. And now we're at the question of whether there's any evidence of pretext. Enough evidence of pretext to get past summary judgment, right? And one of the- It may turn out not to be true. You may show up in front of a jury, and they may turn down everything you say. So the question is, what's the evidence of pretext that should have precluded summary judgment being granted on the retaliation claims, not on the state law claims? Well, one of the factors to consider in this was what was their reaction. And instead of relying on any statute, they're claiming, okay, the reason we did this was this was terribly disruptive. That was their explanation. Well, if it was, then they had statutes that have implemented. Instead of doing so, and the statutes are very clear as to what kind of behavior, including using foul language or being abusive, where a parent willfully disrupts with that kind of a language, then they can be banned for 14 days. But there is nothing here in any California statute that authorizes an indefinite period of ban, having to ask permission 24 hours in advance, and then having the principal be able to say no without any explanation. There's just no authority. And making it enforceable by a criminal penalty. I mean, they told these parents, you will be arrested. This wasn't just, you know, please give us a request. It was, if you don't do this, and you show up at that hands-on art project, or if you show up at that field trip with your disabled son, you're going to be arrested. And there's no authority for it. You can't make a claim, a threat that you're going to be arrested for doing something that isn't illegal. Could a, under California law, could a school say to all parents, put aside the retaliation issue, we want 24 hours notice before you're coming? A school could, I, the 5101 does have that provision for requesting. Reasonable, reasonable request and notice. Right, reasonable request. It's hard to think of less time than 24 hours. It also says, it also says that the request must be granted. Right, no, I'm putting aside the denial. Right. I'm just saying, is telling someone that they have to ask 24 hours in advance to come to campus is, on its face, seems to be okay under California law? I think if California enacted a piece of legislation that said this is our policy, then that probably would be okay. No, I'm not, you're answering a different question than the one I'm asking, which is existing California law, a school district says, you know, we'd like all parents to let us know a day before they want to be on campus, okay? I, I, I don't, I'm suspect it would, might be all right, yes, your honor. I, I don't see anything that, that would overtly prove, prevent it. What, but the problem is not so much asking for the permission. The problem is. Is denying the actions. We can say no, and we can say no any time we want for any reason. And if you think about how potent that is to retaliate or to, to use to, to chill speech, a parent is now at the complete mercy of a principal. If they type something on Facebook and the principal doesn't like it. But doesn't that go to the reasonableness of the, of the, of the letter? I mean, in this case, my recollection is they had actually contemplated or actually initially drafted a letter of, of this kind and decided not to send it because it appeared that situation had resolved itself. Then they actually sent another letter, which they ultimately withdrew. So this was essentially the third letter. I mean, they were not, it didn't seem to me that they were looking to, to, to unreasonably exclude. And doesn't, isn't there, I mean, the district judge alluded to it and I hope I'm not confusing this with another case, but they need to talk about the discretionary function as being a defense under California law. That has to, well, this, this is, was not really, that does not fall into the discretionary exceptions that would be for, for personal immunity, but, and in fact, there is no discretion to do something that you don't have the authority to do. They did not have the authority to, to tell her that she could not come on the campus. Let me ask you this. You say there's an issue of fact. Suppose we accept that everything they say about her is true. They still couldn't have issued that letter. They could not have imposed the restrictions that were imposed in that letter legally. In other words, just give us notice and request. And even if they, and that, that, that was, that letter would be bad, even if she did everything that they say she did. Yes, because there is no authority under California law when a parent is disruptive to send that kind of a letter and to require the permit, the permission of the principal. The only statute. I want to talk about the Rehabilitation Act claim, the retaliation claim. If, if she, if she had, honestly, you know, if she had done everything that they said that she did in that letter, it still doesn't arise even to the level of disruption that under California law would justify banning a parent. You could go into a classroom, curse out a teacher in vulgar language, place the teacher or the school personnel in such fear that they have to hide in a closet and they can't issue a letter of this kind in which that ultimately in, in most instances, when she asked to come on, they granted it. Your Honor, if she had done that, which she did not do, there's, my premise of my question is, you say that if she did everything that they say she did, that they couldn't have written this letter. Your Honor, they never said that she went into a classroom, used vulgar language and, and, and they, but, but let, let me, let me take your hypothetical. I, I, I do understand your question. Let me answer your question straightforward. Let's say she went into a classroom, she used foul language, she disrupted the classroom, it was a terrible thing. And that would have been a, a, a violation of a criminal provision regarding parents willfully disrupting, it would have been a misdemeanor and they could ban her under 626.4 for 14 days. That, that's what they could do. But they could not, in your view, even though they could ban her for whatever period of time, they could not, in your view, require her to get 24 hours, get, ask in advance for 24 hours and get permission to come? The key there. Yes or no? No, they could not. Because that, that extends, effectively extends the ban beyond anything that is contemplated under, under the law. But they could tell to all, they could tell all parents they had to ask 24 hours in advance? Yes. I, you know, the, the real problem is that the principal could say no. See, it's really, see, what you're really saying, I think, is this is, what makes this illegal in your view is that it's a retaliation. I'm not sure that telling any parent that they have to take 24, you know, they can't come on campus without 24 hours advance permission violates any California law. What you're really saying is that this was done in retaliation for her advocacy of, for her child. I, I, but I think it does go a little further than that. If you look at the statute that governs the access by registered sex offenders, that statute does say you have to get 24 hours notice and you have to get permission. Now, if it was just 24 hours notice in this situation, that would be somewhat different. But if it says 24 hours notice and permission, and that permission can be denied for no reason, that permission can be denied because of retaliation. See, my, my, and we're, I know we're going over time there. Certainly they can say not tomorrow. Tomorrow we're taking a test. Tomorrow we're taking a field trip. See, you're perceiving from this an absolute right to attend the campus 24 hours after giving notice. And I don't find that anywhere in the statute. And you're not making, so I understand your retaliation claim. And I think it's, it's the, it's the heart of this case, but I'm having trouble understanding the violation of the California statute just because they could have done something else. The problem is, Your Honor, if, if they said, look, you know, when you're, you're asking to do something, they say, well, this isn't a convenient time, let's do it at another time. That's one thing. It's quite another to say, no, you can't do that. Yes, you can do that. Which claims do you think they're disputed issues of genuine fact? Even the 12B6, Your Honor, the dismissals, the district judge, instead of taking the allegations as alleged in the complaint, took the accusations as alleged by the school district. And we contested those. Looking at Mr. Canfield, he did not use any foul language. He was a victim. He was attacked. He took that position at the time. He took it in his deposition. He got no opportunity for a hearing, no opportunity to, to prevent, to present the witnesses that he said he had. They took back the letter with respect to the husband. Months later. Well, but. Okay. Only months later, he was banned for a period of time. And you know, the, again, the idea is, yes, theoretically they could put a, a requirement of written permission every time, but it wouldn't stand. Parents wouldn't put up with it. Well, whether they'd put up with it or not, it's not the issue. See, that's. The school board. Well, putting up with it is not a legal argument. I mean, the real problem here is you think they were picking on your client and there's some evidence that they were, but I think that's, that goes to your rehabilitation claim. But I'm not sure how it goes to your state. That's, that's my problem. I'm just letting you know. All right. So why don't, we're well over. Why don't we hear from the school district? I had wanted to reserve a little time for rebuttal. I had wanted to reserve a little time for rebuttal, but that's. Okay. Well, I know there's a lot of questions on this case. You'll get some. I always get worried when people carry so much up. May it please the court, Daniel Modaferri for the defendant's appellees. I like to start arguments with common ground and simple questions of what everyone can There's no dispute, certainly, you know, hearing the argument of counsel and questions from the court. There's no dispute, certainly, that parents do not have the absolute right to unfettered access to a school anytime they please. So then the question is, under what circumstances, if any, do they have the right to access? Well, there's a preliminary question, which is, let's assume you're denied access under a circumstance where the school district shouldn't be denying you access. Do you have a private cause of action for damages? I suppose, Your Honor, it would depend on the circumstances and the motivation. Is there, it's a legal question. It doesn't depend on circumstances. Is there a private cause of action under California Education Code 5101? I've got the numbers wrong. 5111, Your Honor. Yeah. Is there a private cause of action for damages? No court has ever held that there is one. What's your position? I know, we know that because I asked that to your friend and she said, I can't find a case either. So what's the school district's position? My position, Your Honor, is that if the legislature had intended to create personal liability for school administrators every time they deny access to a person to come to campus, the legislature would well have said that. So your position is there is no private cause of action? There is not. That's a simpler way to put it. Assuming there is a private cause of action, and assuming, as your friend says, that it's probably okay to say to parents, you got to ask for 24 hours in advance before you come, under what grounds may permission be denied under state law? There's no clear indication, Your Honor, that there are any guiding principles that tell administrators under what circumstances they must grant. Well, counsel, in this case, there were some activities at the school or trips that other parents were allowed to come, but for these parents to be able to participate in those things, they had to make a request and have it granted. So for those things where the parents were invited, what justification is there for imposing this request and authorization? Certainly, Your Honor. The record shows four instances in which Mrs. Canfield requested access to the campus. And I'm on ER 119. Of the four, three were granted. The one that was denied was to attend a hands-on art activity in Mrs. Picasso's third grade class, which I'll remind the Court is not the class in which Mrs. Canfield's disabled son attended. Right, but the state law claims are not dependent on that. The state law claims, I take it, are made up with respect to access to all children. Correct. But that's just to clarify. So as to Mrs. Picasso, the Court will recall that this was the teacher as to whom there was a controversy at the beginning of the year of whether or not Mrs. Canfield's youngest daughter ought to be assigned to Mrs. Picasso's class. As part of that, there was a meeting with the principal and with Dr. Elwood, the director of Ed Services, at which Mrs. Canfield used profanity and was instructed as to proper behavior for an adult on a campus. Immediately after that, Mrs. Canfield went to Mrs. Picasso's classroom, was asked to leave, and again used profanity toward the principal. Aren't these factual issues in dispute? I mean, if there is a cause of action, aren't these factual issues in dispute? Your Honor, there are no factual issues in dispute whatsoever. In fact, on ER 54, the plaintiffs in their opposition to the summary judgment motion explicitly stated, in responding to defendants' statement of undisputed facts, plaintiffs have noted that although several of the listed facts are not supported by admissible evidence, plaintiffs have designated them as undisputed for purposes of this summary judgment motion. There are no disputed facts whatsoever. Plaintiffs did not produce any admissible evidence of their own. The only exhibits that plaintiffs produced whatsoever were attached haphazardly to the back of their opposition. My understanding is the California claims were dismissed on a 12B6 motion. That's correct. So that you have to take the complaint in the light most favorable to the plaintiff, correct? Indeed. There may have been, we have a summary judgment motion later with respect to the federal claims. Correct. Okay, so with respect to the California claims, why don't they state a claim on, see that's, why don't they state a claim on their face? What you're saying is that even if someone is kept out of the school for no reason, that's what she alleges. Turns out you got a reason, but that's summary judgment. She says, I was kept out of the school for no reason. You win that case 150 times if you try it because you got a reason, but it's a motion to dismiss. And she says, I was kept out for no reason. Can you keep her out for no reason? I believe so, your honor. I believe that that's part of the discretion vested in the school administrators to determine when a reasonable time is for the plaintiffs to come to campus. Because the statute only provides that they must be allowed to come within a reasonable time after making the request. With respect to at least this one occasion, they were not allowed to come, correct? Correct. But that's not in the face of the complaint, so that's part of the difficulty of mixing the two factual records. I understand. So the complaint makes the broad allegation that I'm entitled to come. Correct. And you can't impose this 24-hour restriction on me. Correct. And as to the field trip issue that was addressed earlier, that issue is on the face of the complaint. And what's actually alleged is that the plaintiff's daughter indicated that her mother would be defendants in this case, made a comment that she did not believe that the mother was permitted to come to the field trip. It was then run up the chain of command, counsel got involved with sending a letter, and ultimately she was permitted to attend the field trip. So that's why we asked your opponent this question. In the end, were there circumstances where she asked for permission to come to the campus to observe, and she was completely denied that permission? With respect to this field trip, I understood that on this one field trip, the two parents were not allowed to go. Your Honor, I don't believe that there's anything in the record to indicate that. Okay. That's why I was asking that question. Somebody may have said don't come, but eventually they got to go. I believe that's correct. Okay. With respect to the federal claims, and I think, you know, we all agree, if you like common ground, we all agree that we're at the third step of the so-called McDonnell-Douglas analysis. Correct. Is there any evidence or pretext, or sufficient evidence, to create a triable issue of fact? Your Honor, that goes to what I was saying a moment ago, the plaintiffs did not present any evidence whatsoever in opposition to some of the evidence. They may not have presented it, but some of the evidence they say that's in the record is evidence of pretext. They say that some of these actions were taken shortly after they engage in advocacy efforts on behalf of their child. And that's where the case law indicates that temporal proximity by itself does not establish a fact. Not enough, but it's a fact. Well, certainly. Okay. And now we have, so let me ask you the other facts, because I don't think it's disputed that these facts exist. There's some sort of, there's intemperate internal emails. An intemperate internal email, I think, about these parents. I'm not asking you to defend it or not defend it, but it's there. And there's a letter that cites provisions that are not applicable to this particular remedy, which is for the 14, you know, which is the give us 24 hours notice, et cetera. So why don't those things together, because I think those are the only things there are. Well, there's also the fact that in the briefing on appeal, they offer reasons completely different from the reasons that appear in the letter for defending. And the reason I'd left those out, because I wanted to get to that. I'm not sure they're relevant, but I want to ask you. It does kind of blunder. Yeah, it's a pellet briefing, so I'm not sure what it tells me about the motivation of the people at the scene, whether they were, but take those three, because I think they're all in the record, even if they weren't offered by your opponent. Why don't they create enough of an issue of fact on pretext? Your Honor, first of all, we can't be so myopic to look at only the fact that Mrs. Canfield was coming to the school in January and February with regard to her disabled child, and then the letter comes out in March. Again, that would go back to temporal proximity alone. What we're dealing with here is not the fact of advocacy. It's the method of advocacy. My clients have a right to come and advocate before this court, but if I began using profanity before this court, this court would be well within its means to throw me out. But we're here on summary judgment, and so the question is, I don't think there's any dispute those three facts exist that I mentioned to you. Are they insufficient to create a jury question on pretext? They are, Your Honor, and actually, I think that I don't want to get into a dispute of fact if we're talking particularly about the 12B6 issue, but- No, 12B6 is only the state claim. Yeah, we're on the summary judgment. So as to, I guess it's not really a dispute of fact because it's a question of law as to whether or not the statute cited in the letter is applicable. There are multiple statutes cited in the letter. Granted, this letter is reformed and adapted from a form letter- So let's assume for purposes of discussion that the statutes aren't applicable. Is that evidence of pretext? Is it just a legal error? I think it's a lay person with a degree in education citing the wrong statute. I don't think it is evidence whatsoever of animus toward a person based on advocacy for a disabled person. There's no-  I don't think a reasonable jury could make that conclusion, Your Honor. I think that that's a giant logical leap to go from someone using, again, a form letter that for purposes of the hypothetical will assume cites the wrong statutes- I would think a principal or a headmaster should have knowledge about laws pertaining to who has the right to lawful access at a school and under what circumstances that access can be denied. I don't think that's a huge leap. I mean, I've been chairman of the board of K-8 schools. I know what level of law you have to have to understand who you can kick off the campus and who you can't kick off the campus. Correct. And certainly, they ought to be familiar with their authority generally, but the particular code sections- Right. And if they don't know, they should consult with an appropriate person at the school district. Well, go ahead, answer her question. Sure. So certainly, you know, if an attorney were writing this, they would look up the statute and make sure that they're citing exactly the right code. Right, but before you kick off someone who otherwise has the right to lawful presence on the campus, you ought to know that you have the right to do that. Well, that also requires, Your Honor, the assumption that this person does have the lawful right to presence on the campus. Well, the statute's clear. It says if a person has the lawful right, they can only be kicked off under these circumstances. Except that, in order for the person to come to the campus- Well, one of the meetings she was kicked out of was a meeting where they were discussing the IEP. I don't believe that's in the record. It's in the letter. In which letter? That is the last paragraph. Of the March 5th letter? The letter to Misty. I'm sorry, Your Honor, I don't see that- In the morning of May 6th, she said to Ms. Singh in front of Ms. Como, I'm not going to put up with this shit. I'm not going to sign the IEP. And so, that had to do with the IEP that she wanted to discuss. Again, Your Honor- I mean, I- I- I- Okay. She said the word shit. You're saying that's the reason it was okay to kick her off? I think it's too myopic to look at just one instance of using the word shit. Well, you put all these instances in here, and I- you know, they may- it may be that the school officials just found her too much- they didn't want to deal with this person who, you know, quite understandably may have been overreacting in her advocacy because her child is disabled, and she is not feeling that she's getting the appropriate help that she needs. In which case, Your Honor, the law provides very clearly mechanisms for rectifying that situation, including due process hearings related to the IEP. But the- the- I'm looking at this email, and this is from Elwood. The more I work with Mrs. Camfield, the more I believe public education might not be the medium for educating her children. That email is sent out right before she gets the LP- the- the letter, the DP letter, right? I don't recall the precise date, Your Honor, but I recall- But in close proximity. I recall the email. And there's a bunch of stuff going back for teachers, and by the way, you get to trial and a jury might say, boy, they were all perfectly justified in doing it. She was impossible. But there's a bunch of exchanges there saying, please protect me from this woman. Keep her off- you know, keep her away from me. I'm bucking this up the line because I'm afraid to deal with her. And when you put that all together, and some of the reasons they were afraid to deal with her was her advocacy, the mode of it, not the- not the fact of it. You know, isn't that enough to- we're- remember, we're only on summary judgment. To create an issue of fact about whether or not this ban was- or this, not ban, but order was in response to her advocacy? Well, no, Your Honor. There's two issues with that. Number one is that, again, these facts aren't in the record. The email was attached to- ER- ER 96. The- right. That email was attached to the back of the points and authorities in opposition to the motion. There's no foundation for it. There's no anything. But to address the email itself, you know, there has to be context, which would be the purpose of laying foundation. The context is that there was discussion among not just the school, but with the parents about whether or not their child might be better in a private program. And that's- again, that's not in the record because it- the email wasn't in the record. So these all- these emails all show up just attached to a response paper? Correct. With no affidavit? Correct, Your Honor. All right, counsel. You're over your time. Thank you. Thank you very much. I'll give you- Can we go on? Yeah, a minute. We'll be good. We're well over. I apologize. I know. It's a lot of issues. Can I ask you a question that troubles me? When I said that I understood the facts to be undisputed, among which I said that this aide felt so uncomfortable that she would hide in a locked closet until Misty left the campus in order to avoid unpleasant interactions with her, and I also suggested that other relevant facts were undisputed, you said they were all disputed. You even- with respect to that specific one, you said it was disputed. Now I'm looking at your statement of undisputed facts, and particularly on page ER 117, in which you say it's undisputed, following these incidents with Misty, Ms. Komu felt so uncomfortable that she would hide inside a clock classroom until Misty left the campus in order to avoid the unpleasant interactions with her. You say that it's disputed when you put it in your statement of undisputed facts. Was your answer to me correct when I said that I had assumed these were undisputed? There were a number of facts that were disputed. Yes, but I specifically asked you about this one, and you said that it was disputed. What I was trying to communicate, Your Honor, is that Misty did not attack this woman. That this was her- Misty had no idea that she was even doing this. That what she was uncomfortable about was- The next- the preceding undisputed fact was that in speaking to Ms. Komu and another raid, Misty again used the word ship, and in preceding that is 80 in which Misty asked about the instructional assistant, Komu, if she would be the 8 for minor 1 for the entire day, and if so, Misty said, that shit's not flying. All of this you did not dispute, and what bothers me more is that you were not candid in answering my questions. And I find that to be unacceptable. If you'll give me a minute to explain. We did put in supplemental excerpts of record about Ms. Komu, and what she said is the reason that she was not wanting to be there is she felt that Misty was critical about her, that she was critical of her work, that she felt that she might lose her job because of Misty's criticisms. It wasn't because Misty had attacked her. So yes, the fact that she was avoiding Misty, we never disputed that. What we disputed was- Look, the record- this is all being recorded, so the record will speak for itself- Your Honor, I apologize. I did not mean to mislead the court on that. She did avoid Misty. Misty had no idea she was avoiding her, and she avoided her because she didn't want to be asked- And why did she avoid her? Because she was using vocal language- No, Your Honor. She was running her down. No, Your Honor. That's not true. She says the reason she did it is that she didn't want to answer Misty's questions and that she felt that Misty was critical of her performance. That's what she said in her declaration that we submitted in the supplemental excerpts of record. But I'm looking at your response to their statement of facts. There's about five facts that are disputed, and mostly it's legal conclusions. So every fact is undisputed that you said was undisputed below, correct? You don't get to change your view on appeal. Yes, yes. There were some facts for which we said there was no admissible evidence to support this. No, I'm looking at their statement of undisputed facts. And I only count six objections. Some of them are partial objections. Some are the best evidence rule. The letter speaks for itself, which is, you know, it's to their characterization of the letter. It's not to the letter. I don't see anything else. Best evidence rule. Best evidence rule. It's, again, the letter. Partially disputed. You're talking about what the letter said. Partially disputed. This is one where Dr. Elwood's testimony. I don't see any other disputes about their list of facts in your list of undisputed facts. Well, Your Honor, on excerpt of record 113, their fact was that this teacher wrote an email saying that she observed these. Which one of the, number 62? 62. Well. Her email is inadmissible hearsay to the extent it is intended as evidence the facts contained therein. In addition, the email lacks foundation. But what's interesting, and then you say Mr. Canfield testified he didn't use any profanity. You don't dispute the letter insofar as it deals with Ms. Canfield, other than for legal reasons, which, you know. There were various things that were disputed with respect to that letter. And, you know, if I could go through. For example, the idea that the children were discharged because somehow they were required to protect their privacy. There's no evidence of that at all in the record. They didn't put any evidence to support that because there isn't any. Well, but 62 says Ms. Kapoor reported the answer to the principal, telling Dr. So-and-so that both Mr. Canfield and Ms. Boitano had raised their voices and used profanity. And you say it's partially disputed. You have some legal objections about the foundation. He did send the email. What? There's no dispute of that. What we're saying is that it was not accurate. It was not correct. That's not evidence that in fact it was in some place. Well, see, that's what I'm trying to find out. It doesn't say Mr. Canfield said he didn't use any profanity. That's the only place in which you say it's not correct, don't you? What we're saying is that the letter is inadmissible. It doesn't exist. Right. That's a legal issue. I understand. Right. So there is no evidence. That's not a disputed fact. And if you look at the letter. Am I right, the only fact you dispute that was asserted here was that Mr. Canfield did not use any profanity? We're disputing the truth of the content of that letter. All they say is she sent this email. Yes, she sent the email. Was it true? No. That's my problem. It's a time for summary judgment. The judge is trying to figure out what facts are disputed. They say here's some facts. And you say the email's not admissible. It lacks foundation. And all the legal objections. Fair enough. The judge can rule on those. What's your factual dispute with the email? Mr. Canfield testified that he did not use any profanity. That's your only factual dispute with the email that's listed in your objections. Our factual dispute is as to what was reported that he was the one using profanity. And he didn't. Okay. So otherwise you don't factually dispute the you don't factually dispute anything here. You argue that it's not admissible. And we can deal with that. But you don't factually dispute anything other than that. We dispute that he used profanity. Mr. Boitano did. And my client did not. No, I understand. But with respect to that allegation, all you dispute is that Mr. Canfield used profanity. We're spending an awful lot of time on this. And the one point I just wanted to make, Your Honor, is that if whatever she did, whatever he did, there are California statutes that say here's how you respond to it. And it's very carefully drawn. California has occupied the field. They've said if there's a disruption, you can tell the parent to leave. If they refuse to leave, you can have them arrested. If they have created a willful material disruption, you can ban them for 14 days. But under no circumstances can it extend beyond 14 days. And that is really the fundamental problem here. Because they're getting around the California statutes, which are completely comprehensive. If California said, you know, what you can do under that case is make them require request for 24 hours in advance and give the principal the option of saying no. California could have said that. They didn't. This was a completely unjustified imposition. And not only that, but it was coupled with a threat of criminal prosecution. And there is simply no criminal statute on the books that says that a parent can be arrested and prosecuted for coming onto campus six months later just because the principal said no. There's just no law that would do it. And so making this criminal threat under these circumstances completely unwarranted by the law. All right. Thank you, Counsel. Thank you. Camfield v. Rodondo Beach Unified School District is submitted.
judges: Wardlaw, Hurwitz, Korman